## JAMES WINGARDEN v. JOHN VERHAGE.

*Copartnership accounting.*

This is a case of copartnership accounting, and involves questions of fact *purely.*

Appeal from Ottawa. (Arnold, J.) Argued November 9, 1887. Decided January 5, 1888.

Bill for partnership accounting. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*J. H. Tatem,* for complainant.

*P. H. McBride,* for defendant.

CHAMPLIN, J. In the spring of 1883 the parties to this suit entered into a copartnership in the purchasing and selling of potatoes. Each party was to devote his time to the business, and the profits and losses were to be shared equally. There was no fixed amount of capital, nor was the partnership name agreed upon. The business of the firm appears to

have been transacted in the name of the defendant, who made all the shipments of potatoes and received the pay therefor. The bill is filed to obtain an accounting and settlement of the partnership affairs.

It is impossible to do exact justice between these parties, for the reason that no proper books of account were kept, and there is no means of ascertaining with exactness the cost of the potatoes purchased. It is shown that the parties paid from 35 to 50 cents a bushel; but no account was kept, and there is no way of ascertaining how many bushels were purchased for each price. The complainant testifies that the average profit was 10 cents a bushel, and that there were no losses. The defendant denies this, and shows losses upon the sales of two or three car-loads.

I am satisfied from the testimony that complainant invested all money advanced to him by the defendant in the purchase of potatoes.

Complainant admits the receipt of $192.70, and produces receipts from persons from whom he bought potatoes to the amount of $192.30, besides one of $17.64 for oats he bought for defendant. In accounting for this money advanced him by defendant, he includes a receipt from his brother for potatoes purchased from him, of $89. The complainant testified that he put into the partnership business $82 he had on hand in the first instance, and afterwards the profits on the first car-load sold; $100 avails of a note which he owned; and $50 which he borrowed. He testifies also that he turned the note out to his brother to pay for the potatoes purchased from him. If he did this, he could not have applied the money received from defendant to that purpose. I am satisfied that he is mistaken with reference to investing the avails of the note in the business. From the testimony I am satisfied that he invested in the business $82 which he had in hand at the commencement; that afterwards he put in his share of the net profits of the first car-load sold, amounting,

according to the testimony of Mattie Verhage, to $33, and the further sum of $50, which he borrowed for the purpose, making a total capital put in by him, and for which he should be credited, of $165.

The total profits arising from the business testified to by Mattie Verhage amounted to $156.53, to which should be added the profit on last car-load shipped to New Jersey, as testified to by defendant, making a total profit of $181.53. From this should be deducted the losses testified to by Mattie Verhage, amounting to $54.36, and the further loss, testified to by defendant, on fourteen bushels of inferior potatoes, $4.80, and for expenses of team, and trips to Grand Rapids, $7.50; total amount to be deducted, $66.66, leaving net profit of $114.87, one-half of which, $57.43, should be credited to the complainant.

The total amount of money in defendant's hands, and which he should account for and pay over to complainant, was $222.43, which, with interest to the date of the decree in the circuit court, amounted to the sum of $262.46, for which sum the court below entered a decree.

We think this amount is substantially correct, and the decree is affirmed, with costs.

SHERWOOD, C. J., and MORSE, J., concurred. CAMPBELL, J., did not sit.